PETERS, *et al.*, Plaintiffs in Error, *vs.* CARR, *et al.*, Defendants.

1. Particular words in a will, if possible, will be so construed as to harmonize with the general intent of the testator, as collected from the whole will.

*Error to St. Louis Circuit Court.*

THIS was a petition for partition. The rights of the parties depend upon the will of William C. Carr. The following is a copy of the clause affecting the questions decided:

" In making a will, I am influenced by the desire to effect two objects:

" The first of which is, to provide a suitable support for my wife and minor children, during her widowhood and their minority.

" Secondly. To make an equal division, at suitable periods, of the balance of my estate amongst all my children.

" To effect the first, without doing injustice to any, is with me the main difficulty to overcome. With these objects in view, I make and publish the following, as my last will and testament, to wit:

" *First.* That there be annually set apart, in the first instance, a sufficient sum for the support of my wife, during her widowhood, and my minor children, including their schooling and education, out of the revenue from my estate; and should the income of my estate not be sufficient for that purpose, then out of any money on hand, or debts that may be due the estate; but, as before observed, what should be the amount of this sufficient sum, is a subject of much embarrassment to me. Confiding, however, greatly in the prudence and discretion of my wife, in the economical disbursement of this fund, and judging from the average annual amount of my family expenses, I suppose two thousand dollars will be ample for this object.

" *Second.* Should my wife not choose to remain in my present dwelling-house, my executors are directed to build her one, on any ground I may own (or rent her such an one as she may choose,) with as much ground or land attached to it as she may wish.

" *Third.* If she prefers remaining in my present dwelling, but not to occupy all the land attached to it, then my executors are directed to set apart so much thereof as she may choose to occupy, and lease the balance as my other real estate is leased, in the three Additions made to the city by me.

" *Fifth.* After the election of my wife, as hereinbefore provided for, is made, my executors are directed to make an inventory of everything that may remain, and have it appraised, and the personal property sold, as the law directs, and out of the proceeds of such sales shall be set apart so much as to com-

ply with the provision in the first article of this will, for the immediate support of my wife during her widowhood and minority of my younger children, provided the interest of what money I may have out, and the general revenue of my estate, be not adequate to that object.

" *Sixth.* Whatever amount may remain of the proceeds of my personal estate, interest of money, cash on hand, or general revenue of my estate, my executors will proceed to divide equally amongst all my children, paying to my three married daughters, Anne M. Peters, Virginia E. Cabanne, and Cornelia C. Dyer, immediately, whatever may be their shares, if anything ; and the shares of the minor children to be put out at interest by my executors, under the direction of the probate court. Similar dividends and distributions they will continue to make annually, so far as assets may be received, until the accounts of the estate are closed.

" *Eighth.* Having commenced the system of leasing, instead of selling lots, in my several Additions to the city of St. Louis, my executors are directed to continue that system, in the three Additions to the city made by me, until my youngest child, Eugenia, shall be of age or get married, at which time, if not sooner, my will is, that all my estate, of every description, be equally divided between all my children, deducting from the share of each such sums or advances as they may have had, either from me, in my life-time, or my executors, after my death ; also, a sufficiency to support my wife.

" *Eleventh.* The balance of the land at Rock Point, that I own in my own right, derived from the children and heirs of Judge Bent, as well as the west end of the tract on which I live, being west of the last Addition to the city made by me, and adjoining the Presbyterian burying-ground, my executors will proceed to sell on a credit of one, two, and three years, with lawful interest from date of sale, secured by deed of trust ; or lease the same according to directions in a preceding article. To effect this they will, immediately after my death, if not done before, cause streets to be run through it, and lay it off into

lots and alleys, in such a manner as they may deem best. The tract of land now enclosed with a high plank fence, and including my residence, servants' houses, coach houses and stables, and extending from Eighteenth street to Twenty-first street, as well as the piece next to the burying ground, has been regularly laid out into blocks, and the corner stones of the blocks and alleys all placed and set, except where prevented by buildings or ponds of water, and the plats duly recorded.

" *Sixteenth.* If, at any time, it seems in the opinion of my executors to be necessary to sell any of my real estate that is directed by a former article to be leased, to meet the provisions of my will, they are directed to make sales of such portions of my real estate, from time to time, as to them shall seem to be necessary."

The petition states, that said Wm. C. Carr left nine children, of whom Ann, wife of Ralph Peters, aged about thirty-nine years ; Virginia, wife of John C. Cabanne, aged about thirty-four years, and Cornelia, wife of Thomas B. Dyer, aged about thirty-two years, and the plaintiffs, are the eldest, being children of a first marriage ; the defendants are the widow and her children, (all of whom are minors,) and the executors of said Carr. The widow renounced, in due form, the provision made for her by the will, and all that portion, by far the greater part of the will, has failed.

The defendant, Barlow, and the defendant, Dorcas Carr, in their several answers, set up, in substance, that by the will no partition can be made of the real estate, until the youngest child, Eugenia, arrives at the age of twenty-one years, or is married, and refer to the eighth clause of the will, as authorizing that conclusion. The answers say that the intention of the testator, as apparent on the will, was, that there should not be any partition, unless in the event of the death of the said Eugenia, who is now between four and five years of age. The case must be determined upon a construction of the will, and any further statement is not deemed necessary.

*R. M. Field*, for plaintiffs in error.

I. The will, on its face and supposing its provisions to be all now effectual, does not take away the right of partition.

1. The *first* clause has no such effect; for obviously partition may be had subject to the charge of $2000 thereby created.

It is a familiar practice in equity to make partition of land subject to incumbrance. *Wotton* v. *Copeland*, 7 J. C. R. 140.

So where a widow is entitled to a " living" out of real estate, partition may be made *subject to her rights.* *McClintick* v. *Mouns*, 4 Munf. 328.

Nor is it any objection that the premises are under lease: the partition or sale must be had in subordination to the lease. *Woodworth* v. *Campbell*, 5 Paige, 518.

And it is no objection to partition that the estate may prove insolvent. This would be effectual only to prevent a sale. *Matthews* v. *Matthews*, 1 Edw. 565.

2. The eighth clause of the will does not stand in the way of partition, because,

*a.* The power of leasing there spoken of, is to continue only till partition is made.

*b.* And the power to lease, or leases subsisting in fact, cannot prevent partition. *Woodworth* v. *Campbell, ubi supra.*

3. The eleventh clause of the will cannot have the effect to bar partition; for it is the well known rule of equity, that when land is directed to be sold, and the proceeds paid to a person, that person is always permitted to take the land without a sale, if he so elects. *Craig* v. *Leslie*, 2 Story's Eq. Jur., section 793. 3 Wheaton's Rep. 563.

In the present case, the will directs the land to be subdivided and sold in separate lots. If the defendants desire a sale, it obviously may be effected by the proceedings in partition, to the extent of their interest.

II. But the main object of the testator, as expressed in his will, has been frustrated by the renunciation of the widow;

and to carry out, literally, the provisions of the will, would be to apply the intention of the testator to circumstances not in his contemplation.

1. The first seven clauses have reference to the keeping up of his family establishment, in a particular manner. All this, by the widow's renunciation, has become impracticable.

2. The eighth and eleventh clauses have obviously reference to the making provision for the support of the family establishment, an object that has utterly failed by the widow's renunciation. So that the power to lease and to sell, conferred by those clauses, no longer exists.

Besides, the powers are wholly incompatible with the widow's dower that has been claimed since the testator's death.

Where the purpose for which land is to be converted into money, fails, the conversion will not take place. See *Ackoyd* v. *Smithson*, 1 Bro. 503, particularly the argument of Scott, afterwards Lord Eldon.

*F. M. Haight*, for same.

The devisees are entitled to the immediate enjoyment of the real estate, unless that enjoyment has been postponed by clear and unequivocal language.

In the eighth clause of the will relied upon by the defendants, to establish such postponement, the words "if not sooner" cannot be rejected, and they must be held to qualify the otherwise general language of the section. It is a general rule in the construction of wills, that words are, in all cases, to receive a construction which will give *every expression* some effect, rather than one that will render any of the expressions inoperative. Jarman on Wills, vol. 2, p. 743.

The respondents say that the words "*if not sooner*" relate to a supposed contingency, which they imagine was in the mind of the testator ; and that he referred to the death of Eugenia before marriage or majority, when, as they suggest, there would be no obstacle. The first answer to this is, "that courts are not permitted to give an effect to the will of a testator, contrary to the plain and obvious import of the terms used

by him, upon a mere conjecture as to his intention." *Mani-gault* v. *Deas*, 1 Bail. Eq. 298.

The language is, "*if not sooner*." It is not, if not sooner made by reason of the death of Eugenia, but if not sooner made in any way.

The second answer is, that the clause contemplates a parti-tion in the life-time of Eugenia. There is no reference to her death. The partition is to be made when she is married or of age, if not sooner done.

The third answer is, that the law "abhors" what savors of perpetuity, and will make no presumptions, indulge in no con-jectures to make out such a case. If the reading be doubtful, this should be decisive. It is not presumed that any person intends to tie up his property and prevent its enjoyment by his children until they are past the age of enjoyment. It is against the known policy of the law, and against the plainest dictates of natural justice and parental love. The power to tie up, for a certain period, is conceded, but it is equally clear that to do it, the language must be plain, express, and unequiv-ocal. 16 Bud. 171. 6 Barb. Sup. Ct. Rep. 503.

The second point made by the respondents is, that upon the whole will, such appears to be the general intent. This gene-ral intention must be considered under two aspects:

I. That upon the whole will, it is implied that the testator intended to postpone the enjoyment of his estate by his devi-sees.

II. That other parts of the will give an interpretation to the eighth clause, which sustains the respondent's construction.

As to the first, there is no such principle tolerated as tying up by implication.

As to the second, there is no view of the will which renders an immediate partition inconsistent with any of its provisions. The power to lease, until a division is effected, is not incon-sistent with a right to immediate partition. *Arnold* v. *Gil-bert*, 5 Barbour Sup. Ct. Rep. 190. The same may be said of the power to sell. There is no object expressed, or sought

to be attained by the testator, in this eighth section, which is not better effected by an immediate partition. The circumstances of the testator's family, and the condition of his real estate, render the supposition that it was his intention to postpone the enjoyment of his estate for the period claimed, improbable, because unreasonable and unjust. 2 *Jarman on Wills*, vol. 2, p. 525, top page, rule 10.

*Spalding & Shepley*, for defendants in error, make the following points :

I. The general intention of the testator, as gathered from the whole will, was to postpone a division of his estate, until the time mentioned in the eighth clause.

It is the intent so gathered that is to govern in the construction of the will.

II. The power of leasing, given to the executors by the eighth clause of the will, is inconsistent with the idea of an intent to allow immediate partition.

III. The expression, "*if not sooner*," in the eighth clause, is not inconsistent with the intent to postpone a partition until Eugenia became of age. It may have referred to the contingency of the death of Eugenia, before marrying or coming of age. Those words must, if possible, be construed in harmony with the general intent, as gathered from the whole will. *Homer* v. *Shelton*, 2 Met. 202. *Morton* v. *Barrett*, 22 Maine Rep. 265-6. Even if those words were inconsistent with the idea of postponing a partition, yet as they are repugnant to the clear intent of the rest of the will, they may be rejected. *Bartlett* v. *King*, 12 Mass. 537. *Jarman on Wills*, vol. 1, p. 419, and cases there cited. (Perkins' ed.) *Needham* v. *Ide*, 5 Pick. 510. 5 Watts' Rep. 13.

The testator might have used the words without attaching to them any definite meaning, through some vague idea that something might happen to produce a partition sooner than he intended.

If the intention of the testator was to postpone a partition until Eugenia became of age or married, such intention must

govern, as long as the will stands, no matter how much the law " abhors" it. The renunciation of the widow will not change the intention, nor will it be altered by any other circumstances not foreseen by the testator. *Act concerning Partition*, R. S. 1845, section 52.

V. The will, by necessary implication, vested the legal title to the real estate in the executors. 10 Paige, Chy. Rep. 242.

*Edward Bates*, on same side, from a minute analysis of the provisions of the will, argued that its whole scope and tenor were inconsistent with the idea of an intention in the mind of the testator to allow an immediate partition of his real estate ; and that the words, " *if not sooner*," in the eighth clause, being merely parenthetical, expressed no intent, and were not repugnant to the substantial provisions of the will ; but even if they were, they might sooner be rejected than all the disposing provisions of the will, which unquestionably express the " true intent and meaning of the testator."

GAMBLE, Judge, delivered the opinion of the court.

The question is presented, under the clauses of the will set out in the statement, whether a partition can now be made of the real estate. It is stated in the petition and admitted, that the widow has regularly renounced the provision made for her by the will, and that Eugenia, the youngest child of the testator, is about five years old.

As cases upon the construction of wills have but little authority in controversies which arise upon other wills, it is neither necessary nor useful to enter upon an elaborate discussion of the meaning and force of the language employed by the testator, in the present instrument.

It is obvious, from the first clauses of the instrument, that the chief design of the testator, in making a will, was, to secure to his widow and minor children, the support which, in their circumstances, he thought necessary, and that next after this object, he intended to provide for the division of his property at suitable periods. When we enter upon an examination of the provisions of the will, after reading this declara-

tion of his purpose in making it, we naturally expect to find in it, not only the provision for the support of the widow and minor children, during her widowhood and their minority, but also to find the " suitable periods" mentioned, when he wished the balance of his property to be divided among his children. We certainly would not expect that upon this point of a division of his estate, he had left the whole question open, so as to leave his children to proceed as if he had died intestate.

It is apparent that the testator intended, in the first article, to make the provision for his wife and minor children a charge upon the " revenue" and " income" of his estate, and this charge is intended to continue, certainly as long as there are minor children. The third article or section provides for leasing a portion of the real estate, if his wife did not think proper to occupy it. The fifth, still keeping the provision for his wife and minor children in view, as the prominent object in making a will, subjects the proceeds of his personal property, which he directed to be sold, to the payment of the sum required for the support of his wife and minor children, if the interest upon money " which he had out" and the general revenue of his estate should not be adequate to that object. The testator here evidently regards this interest upon money and the general revenue of his estate, as primarily and certainly charged with this burden.

In the sixth clause, the testator comes to the second object he had in view, in making a will, to-wit, the division, " at suitable periods," of the balance of his estate. He here directs that whatever amount may remain of the proceeds of his personal estate, interest or money, cash on hand, or general revenue of his estate, his executors should proceed to divide equally among all his children — the shares of the minor children to be put out at interest, under the direction of the Probate Court — and the executors are directed to make similar dividends and distributions, annually, until the accounts of the estate are closed. This clause contemplates a division of some of the effects, which will be completed at once, such as " the

remainder of the proceeds of his personal estate," and " cash on hand ;" but it also provides for annual dividends and distributions, and this can only apply to the other subject mentioned in the article, " the general revenue of his estate." This distribution is to be of the " remainder" of those different funds, and that remainder evidently is, what remains after the provision for his wife and minor children, during her widowhood and their minority, shall be deducted. As this provision, under the first clause, is to be " annually set apart, out of the revenue of the estate," and as the distribution of the remainder of the general revenue is to be made annually, the inference is natural and inevitable, that the testator designed the whole estate to be a productive fund, during the time this provision was to continue, unless he has expressed a different intent in some other clause.

In the eighth article, the testator has combined two objects, first, the manner in which the most valuable portion of his estate shall be made productive, and, second, the time at which his estate at large should be divided. He directs that his executors shall continue the system of leasing, which he had commenced, until his youngest child shall be of age or get married. What that system of leasing is, does not appear upon the record, but whatever it is, it is to be continued until his youngest child is of age or gets married. By necessary implication, the executors are to have the control of this property during the period they are to exercise the power of leasing it, and as, by the common meaning of the terms here employed, there is to be an annual income from the property leased, this direction is designed to enhance the " general revenue of the estate," which is first to provide the " annual" sum for the support of the wife and minor children, and after that is accomplished, the remainder is to be divided equally among all the children, under the sixth article.

The second object to be accomplished, under this eighth article, is the general division of the estate, and the " suitable period" for this, is, the majority or marriage of the young-

est child, " *if not sooner.*"   The whole argument, in favor of
an immediate partition, rests upon these words, " *if not soon-
er,*" and it is insisted that they must have effect given to them,
in ascertaining the intent of the testator.   It is true, that in
construing a will, effect must, if possible, be given to all the
words of the testator, and none must be rejected, unless there
is an irreconcilable repugnance.   It is to be observed, that the
testator's design, as declared in the preamble to his will, is, in
relation to the matter of dividing his estate, to " make an
equal division," at " suitable periods," of the balance of his
estate, amongst all his children.   This design is only to be
carried out by affirmative declarations of the periods at which
the division is to be made.   If the will were silent as to the
times, the testator might be supposed to have forgotten one of
the main objects he had in view, in making the will ; but if
there be in the instrument any language, indicating the
periods, such language must receive the construction which
will give effect to his general intent.   If the words " if not
sooner" were not in this clause, it is not supposed that there
could be any doubt that the testator's intent was, that the gen-
eral division should take place, when the youngest child attain-
ed majority or married.   Does the insertion of these words
express any different active intent ?   It is not sufficient that the
mind of the testator contemplated a probability that a division
might be sooner made ; the question is, whether he has ex-
pressed an intent that it should be sooner made.   It is plain,
that the clauses, which make provision for the wife and minor
children, and which are to be satisfied out of the annual reve-
nue of the estate, suppose it will be held together as a produc-
tive fund, at least during the minority of the children, and
this eighth clause fixes the period for the division, at the time
when the youngest of those minors shall have attained to ma-
jority or married.

Taking the whole of these clauses together, it is not suppos-
ed to be in any degree doubtful, that the general intent of the
testator was to postpone a division of his estate, during the

period that the revenue was charged with the support of his minor children. The words, " *if not sooner*," express no contrary intent. If they do, then, as they indicate no time at which partition is to be made, they leave the whole estate subject to partition by law at once ; they cut off the powers given to the executors, to make the estate productive, by leasing it ; they extinguish the eleventh section, which directs the executors to sell valuable portions of the real estate, and annul the sixteenth section, which confers a discretionary power on the executors, to sell the portions which they were previously directed to lease.

Such a construction is not to be given to these words, in the present case. As has been said before, they do not express any wish or intent of the testator. They are not, therefore, repugnant to any clause which affirmatively expresses his intent. There is no necessity for rejecting them, in order to give full effect to every intent of the testator. They occupy no other position and have no other effect, than merely to express the thought in the testator's mind, that a partition might take place sooner, under some circumstances, than the time at which he declared it should be made. If the youngest child should die a minor and unmarried, all the other children being adults, they and the widow might make a partition.

This would not be a partition under the will, and yet it would not be inconsistent with the will ; and still it might take place at an earlier day than the youngest child would have attained to majority.

It is said, resort is not to be had to conjecture, in order to ascertain the intent of the testator, in using the words, " if not sooner." If the words, in themselves, or in the connexion in which they stand, expressed any intent of the testator, any design, or direction, as to the time at which partition is to be made, there could be no conjecture indulged, by which they should be made to refer to any other time than that in the mind of the testator ; but when they have no such force, when they form but a parenthesis in the sentence in which they stand, we

are compelled to ascertain their meaning, by supposing the cases to which they refer. Accordingly, the counsel for the plaintiff supposes the clause ought to be read, as if it were in this form : "that partition shall be made when the youngest child is married or arrives at the age of twenty-one, if it has not been sooner effected ;" and then, it is conjectured, that the words, "if it has not sooner been effected," mean, that the testator intended, that from the time of his death until the time when the youngest child should attain majority, the whole estate was left open to have partition made, as in case of intestacy, and that the scope and meaning of the clause is, a command, that if partition has been neglected so long, it shall certainly be made at that time. It is not thought that this is a correct construction of the language here employed. The whole will, in all its clauses, and in the intent of each clause, is at variance with the position that partition could be made immediately upon the death of the testator. The renunciation of the widow of all interest under the will, does not alter the intention or change the force of the language used by the testator. The provision made for the support of the minor children, is not lost by that renunciation. This is not a bequest to the widow of an annuity for the support of herself and the minors. The first article of the will no more vests an interest in the widow, than in the children. A sum is annually to be set apart out of the income of the estate, for the purpose of this support ; but this differs entirely from a direct bequest of a specific sum to a widow, declaring the purpose to be, for her support and for the education and support of children, as was the case of *Hawley* v. *James*, 5 Paige R. 457. There, the legacy became lapsed, by the refusal of the legatee to take under the will ; but here, we have a will, directing a sum to be appropriated annually, for the benefit of the widow and minor children, and the legacy directly bequeathed to neither, although the fund is to be disbursed by the widow.

Upon the whole case, the judgment of the Circuit Court must be affirmed.